UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUAN GUTIERREZ SALAZAR,<br><br>                Plaintiff,<br><br>    v.<br><br>FORD MOTOR COMPANY, et al.,<br><br>                Defendants. | Case No. 2:21-cv-06756-FLA (JPRx)<br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND [DKT. 10]** |

### RULING

Before the court is Plaintiff Juan Gutierrez Salazar's ("Plaintiff" or "Salazar") Motion to Remand ("Motion"). Dkt. 10 ("Mot."). Defendant Ford Motor Company ("Defendant" or "Ford") filed an Opposition, and Plaintiff filed a Reply. Dkts. 11 ("Opp'n"), 13 ("Reply").

On November 11, 2021, the court found this matter appropriate for resolution without oral argument and vacated the hearing set for November 19, 2021. Dkt. 18; *see* Fed. R. Civ. P. 78(b); Local Rule 7-15. For the reasons stated herein, the court DENIES Plaintiff's Motion.

/ / /

## BACKGROUND

Plaintiff filed this action in Los Angeles Superior Court ("LASC") on July 19, 2021. Dkt. 1-1 ("Compl."). Plaintiff alleges he purchased a 2019 Ford F-150 vehicle on or about February 24, 2020, that was manufactured and/or distributed by Defendant. *Id.* ¶ 6. The Complaint asserts causes of action for breach of express and implied warranties under California's Song-Beverly Consumer Warranty Act ("Song-Beverly Act"), Cal. Civ. Code §§ 1790-1795. *See generally* Compl. Plaintiff states the "total amount paid and payable, incidental and consequential damages and civil penalties exceeds $25,000." *Id.* ¶ 7. He seeks actual damages, restitution, a civil penalty in the amount of two times Plaintiff's actual damages, consequential and incidental damages, and reasonable attorneys' fees. *See id.*, Prayer for Relief.

On August 20, 2021, Defendant filed a notice of removal, invoking this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. *See generally* Dkt. 1 ("NOR"). Plaintiff now moves to remand to LASC. *See generally* Mot.

## LEGAL STANDARD

A defendant may remove an action from state court to federal court if the plaintiff could have originally filed the action in federal court. *See* 28 U.S.C. § 1441(a). Under 28 U.S.C. § 1332, a district court has original jurisdiction over a civil action where (1) the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and (2) the dispute is between "citizens of different States." "[T]he amount in controversy includes damages (compensatory, punitive, or otherwise), the costs of complying with an injunction, and attorneys' fees awarded under fee-shifting statutes or contract." *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 793 (9th Cir. 2018).

Courts strictly construe the removal statutes, rejecting removal jurisdiction in favor of remand to the state court if any doubts as to the right of removal exist. *Nevada v. Bank of Am. Corp.*, 672 F.3d 661, 667 (9th Cir. 2012). "If at any time

2

before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c).

## **DISCUSSION**

First, Plaintiff argues the amount in controversy does not meet the necessary threshold of $75,000, making diversity jurisdiction improper. Mot. at 2. Second, Plaintiff contends Defendant has failed to establish diversity of citizenship exists between the parties. *Id.*

**I.     Amount in Controversy**

Removability is determined based on the removal notice and the complaint as it existed at the time of removal. *See Miller v. Grgurich*, 763 F.2d 372, 373 (9th Cir. 1985). The removing party need only include a "short and plain statement" setting forth "a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 83, 89 (2014). Where the plaintiff contests the removing defendant's allegations, however, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 82.

In circumstances where it is "unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled, the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds the jurisdictional threshold." *Fritsch*, 899 F.3d at 793 (citation omitted). "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [the] defendant's liability." *Lewis*, 627 F.3d at 400. Accordingly, in assessing the amount in controversy, a court must "assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (cleaned up).

/ / /

Here, although Plaintiff's Complaint alleges only that the amount in controversy exceeds $25,000 (Compl. ¶ 7), Defendant has met its burden of showing that the jurisdictional minimum is satisfied. The court considers restitution, civil penalty, and attorneys' fees in its determination. *See Ortega v. Toyota Motor Sales, USA, Inc.*, 572 F. Supp. 2d 1218, 1221 (S.D. Cal. 2008) ("Damages recoverable under the Song-Beverly Act include restitution, incidental and consequential damages, attorneys' fees and costs, and, if there has been a 'willful' violation of the Act, a civil penalty.")

> *1.  Restitution*

Under the Song-Beverly Act, restitution is measured by the "amount equal to the actual price paid or payable [for the vehicle] by the buyer," less the reduction in value to the vehicle "directly attributable to use by the buyer prior to the time the buyer first delivered the vehicle to the manufacturer or distributor … for correction of the problem that gave rise to the nonconformity." Cal. Civ. Code § 1793.2(d)(2)(B)-(C). The calculation of restitution also excludes "nonmanufacturer items installed by a dealer or the buyer." *Id.*

"[T]he actual price paid or payable by the buyer [only] includes any paid finance charges." *Alvarado v. FCA US, LLC*, Case No. 5:17-cv-00505-JGB (DTBx), 2017 WL 2495495, at *4 (C.D. Cal. Jun. 8, 2017). Where the record does not show whether a plaintiff has made all installment payments for the amount financed, courts have found the total "cash price" listed on a Retail Installment Sale Contract is a reasonable estimate of "the actual price paid or payable" for the vehicle. *See Luna v. FCA US, LLC*, Case No. 4:21-cv-01230-LHK, 2021 WL 4893567, at *7 (N.D. Cal. Oct. 20, 2021); *Messih v. Mercedes-Benz USA, LLC*, Case No. 3:21-cv-03032-WHO, 2021 WL 2588977, at *4 (N.D. Cal. June 24, 2021) (collecting cases).

To determine the restitution amount, the cash price is then reduced by a "mileage offset" to account for the vehicle's reduction in value attributable to use by the plaintiff prior to the first repair or attempted repair, as required by Cal. Civ. Code

4

§ 1793.2(d)(2)(C). *See Messih*, 2021 WL 2588977, at *5. The mileage offset is determined by multiplying the "actual price of the new motor vehicle paid or payable by the buyer … by a fraction having as its denominator 120,000 and having as its numerator the number of miles traveled by the new motor vehicle prior to the time the buyer delivered the vehicle" for correction of the defect. Cal. Civ. Code § 1793.2(d)(2)(C).

Here, Defendant argues the total purchase price of $48,657.04 reflects Plaintiff's potential actual damages based on the undisputed Retail Installment Sale Contract ("RISC"). Opp'n at 5; Dkt. 1-3. However, Defendant does not consider, nor does the record show, the number of installment payments Plaintiff made for the amounts financed. Therefore, for purposes of this Motion, the court will consider the total cash price of $29,048[1] stated in the RISC (Dkt. 1-3 at 3, ¶1(A)) as a reasonable estimate for the actual price paid. *See Luna*, 2021 WL 4893567, at *7; *Messih*, 2021 WL 2588977, at *4.

Further, Defendant has not applied any offset in calculating actual damages. Plaintiff argues Defendant fails to consider the mileage offset, and such an offset could significantly reduce Plaintiff's actual damages. Mot. at 6. Yet, despite arguing this could significantly reduce the amount in controversy, Plaintiff's papers are silent as to when, if ever, Plaintiff first provided the vehicle for repairs, the mileage upon doing so, or how many miles Plaintiff drove the vehicle. Such information is needed to calculate the offset Plaintiff seeks.

---

[1] The total cash price as calculated in the RISC does not include the following additional charges Plaintiff agreed to pay: document processing fee ($85), optional theft deterrence device ($280), sales tax ($2,794.24), electronic vehicle registration or transfer charge ($30), optional services contract ($3,400), optional debt cancellation agreement ($895), registration fee ($15), state emissions fee ($8), and finance charge ($12,101.80). *See* Dkt. 1-3 at 2-3. The $48,657.04 amount Defendant refers to includes the total cash price, the additional charges as stated, and Plaintiff's down payment of $2,500. *Id.*

5

      Although the court cannot account for a potential use offset, it does not mean Defendant's evidentiary showing of amount in controversy is insufficient. *See Schneider v. Ford Motor Co.*, 756 F. App'x 699, 702 (9th Cir. 2018) (Ninth Circuit reversed the district court's decision remanding a case where the defendant's estimate did not account for the use offset). In *Schneider*, the court determined it was reasonable to assume that "the F-150s did not lose nearly all of their value after a few years of use" and potential use offset would not reduce actual damages so substantially that it would fall below the jurisdictional minimum. *Id.*

      2.     *Civil Penalties*

      The Song-Beverly Act allows a plaintiff to recover a civil penalty of twice the amount of actual damages if the defendant's conduct was "willful." Cal. Civ. Code § 1794(c), (e). Here, Plaintiff alleges Defendant's "failure to comply with its obligations under [the Song-Beverly Act] was willful, in that Defendant and its representative were aware that they were unable to service or repair the Vehicle to conform to the applicable express warranties after a reasonable number of repair attempts, yet Defendant failed and refused to promptly replace the Vehicle or make restitution." Compl. ¶ 23. Thus, according to Plaintiff, he is "entitled to a civil penalty of two times Plaintiff's actual damages." *Id.*

      Courts "have varying views as to whether the maximum civil penalties should be considered when deciding the amount in controversy." *Verastegui v. Ford Motor Co.*, Case No. 5:19-cv-04806-BLF, 2020 WL 598516, at *3 (N.D. Cal. Feb. 7, 2020). This court is persuaded that the maximum recoverable civil penalties should be considered for purposes of determining the amount in controversy "because that is what Plaintiff put in controversy." *Cox v. FCA US LLC*, Case No. 3:20-cv-03808-WHO, 2020 WL 5046103, at *2 (N.D. Cal. Aug. 24, 2020); *Saulic v. Symantec Corp.*, Case No. 8:07-cv-00610-AHS (PLAx), 2007 WL 5074883, at *4 (C.D. Cal. Dec. 26, 2007) ("Courts as a matter of law, calculate the amount in controversy based upon the maximum amount of civil penalties available to plaintiff.").

Plaintiff alleges Defendant acted willfully and that he is entitled to the maximum civil penalty. Defendant should not be required to put forth evidence of its own willfulness to oppose a motion to remand. *See Canesco v. Ford Motor Co.*, 570 F. Supp. 3d 872, 902 (S.D. Cal. 2021) (declining to require the defendant to "prove a case against itself" with respect to liability for civil penalties in the calculation of the amount in controversy); *Rahman v. FCA US LLC*, Case No. 2:21-cv-02584-SB (JCx), 2021 WL 2285102, at *2-3 (C.D. Cal. June 4, 2021) (same). Accordingly, the court finds that for jurisdictional purposes, the civil penalties available to Plaintiff amount to approximately twice the amount of $29,048, which equals $58,096. Adding this figure to Plaintiff's actual damages, the amount in controversy, exclusive of attorneys' fees, is $87,144.

### 3. Attorneys' Fees

Plaintiff's Complaint also seeks reasonable attorneys' fees as authorized by Cal. Civ. Code § 1794(d). *See* Compl., Prayer for Relief. Prospective attorneys' fees are properly included in the court's assessment of the amount in controversy. *See Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy."); *Gonzales v. CarMax Auto Superstores, LLC*, 840 F.3d 644, 648-49 (9th Cir. 2016) (noting the amount in controversy includes "damages (compensatory, punitive, or otherwise) … as well as attorneys' fees awarded under fee shifting statutes").

Here, defense counsel submits a declaration stating she has litigated cases under the Song-Beverly Act for approximately five years, and in her experience with Plaintiff's counsel, Consumer Law Experts P.C., she estimates attorneys' fees to be between $25,000 to $40,000 before trial. Opp'n at 12 (Hughes Decl.), ¶ 3. Indeed, Plaintiff's counsel, Consumer Law Experts P.C., has sought much more than $40,000 in attorneys' fees in this district after settlement in actions brought under the Song-Beverly Act. *See Velasco v. Mercedes-Benz USA, LLC*, Case No. 2:18-cv-7880-MWF

7

(SKx), 2021 WL 945259, at *2 (C.D. Cal. Jan. 4, 2021) (seeking $81,936.50 in fees and $19,578.90 in costs after settlement); *Servin v. FCA US LLC*, Case No. 5:20-cv-00647-SB (KKx), 2021 WL 4860691, at *1 (C.D. Cal. Aug. 20, 2021) (seeking $101,995.60 in fees, costs, and expenses settlement).

Plaintiff, on the other hand, argues this estimate of attorneys' fees is speculative and without justification. Reply at 6-7. The court, however, has no difficulty finding Defendant has shown it is more likely than not that Plaintiff's demand for attorneys' fees is sufficient to push the amount in controversy well over the jurisdictional threshold, to the extent it was not already met between actual damages and civil penalties.

## II. Diversity of Citizenship

The Supreme Court held "diversity jurisdiction does not exist unless each defendant is a citizen of a different State from each plaintiff." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978). "Individuals are citizens of their state of domicile." *Muñoz v. Small Bus. Admin.*, 644 F.2d 1361, 1365 (1981); *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (2001) ("A person's domicile is her permanent home, where she resides with the intention to remain or to which she intends to return"). A corporation is a "citizen" of both the state in which it was incorporated and the state where it has its principal place of business. *See* 28 U.S.C. § 1332(c). Further, "a removing defendant's notice of removal 'need not contain evidentiary submissions' but only plausible allegations of the jurisdictional elements." *Arias*, 936 F.3d at 922 (quoting *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015)).

Courts in this district have held a party may rely on an address listed in a purchase agreement to meet its burden of establishing an individual's citizenship. *Ghebrendrias v. FCA US LLC*, Case No. 2:21-cv-06492-VAP (PDx), 2021 WL 5003352, at *3 (C.D. Cal. Oct. 28, 2021) (Finding citizenship where purchase agreement and repair order listed a California address, and plaintiffs did not deny they

were citizens of California); *El-Said v. BMW of N. Am.*, LLC, Case No. 8:19-cv-02426-JLS (JDEx), 2020 WL 1187171, at *3 (C.D. Cal. Mar. 11, 2020) (Finding citizenship where purchase agreement listed a California address and plaintiff did not deny he was a citizen of California).

Here, Plaintiff argues Defendant has failed to establish Plaintiff is domiciled in California. Mot. at 4, 8-9. Plaintiff's argument is unavailing. In the Notice of Removal, Defendant alleges "[u]pon information and belief, at the time this action was commenced, Plaintiff Juan Gutierrez Salazar was a resident of California." NOR at 4. Defendant also attached the RISC, which indicates Plaintiff purchased the vehicle in California and provided a California residence at the time of sale. Dkt. 1-3. This unrebutted evidence, alone, supports a finding of California citizenship. *See El-Said*, 2020 WL 1187171, at *3; *Ghebrendrias*, 2021 WL 5003352, at *3.

Moreover, in opposing the Motion to Remand, Defendant submitted an Accurint report on Plaintiff dated October 15, 2021, a CarFax report on the vehicle, a vehicle repair order, retail service history printout, and warranty claims printout that provide further support for its argument. Dkts. 11-1, 11-2, 11-3, 11-4, 11-5. The Accurint report lists Plaintiff's addresses dating back twenty years, 2001-2021, all of which are in Los Angeles County, California. Dkt. 11-1. Based on the CarFax report, repair order, retail service history, and warranty claims, it appears the vehicle has only been serviced in California. Dkts. 11-2, 11-3, 11-4, 11-5. Notably, Plaintiff fails to state his citizenship and at no point contends he is *not* a citizen of California.

Accordingly, Plaintiff appears to be a citizen of California. Plaintiff does not dispute Defendant is a citizen of Michigan and Delaware. The court is satisfied Defendant has shown complete diversity of citizenship exists.

/ / /

/ / /

/ / /

**CONCLUSION**

The court finds Defendant has shown by a preponderance of the evidence that the amount in controversy exceeds $75,000, and the parties are of diverse citizenship. Jurisdiction is proper under 28 U.S.C. § 1332. For the foregoing reasons, the court DENIES Plaintiff's Motion to Remand (Dkt. 10).

IT IS SO ORDERED.

Dated: November 10, 2022

FERNANDO L. AENLLE-ROCHA
United States District Judge